IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

MISTRAS GROUP, INC.,

      Plaintiff,

v.                                                No. CIV 11-0812 BB/ACT

LLOYD KAY and WILCO NDT, LLC,
and MARCINA WILKINSON,

      Defendants.

**COURT'S FINDINGS OF FACT**
**AND CONCLUSIONS OF LAW**

THIS MATTER came on for a preliminary injunction hearing on November 7, 2011, and having adduced all the evidence, considered the closing arguments, memoranda of law, and proposed findings of fact and conclusions of law submitted by the parties, and being fully advised, the following are the Court's Findings of Fact and Conclusions of Law:

### Findings of Fact

1.    Conam Inspection and Engineering Services, Inc., (Conam) acquired the assets of H&G Inspection Company, Inc. (H&G), in April 2008.

2.    Defendant Lloyd Kay (Kay) was the General Manager and Radiation Safety Officer for H&G in its Bloomfield, New Mexico offices at the time of the acquisition of H&G by Conam.

3. **Conam hired Kay in April 2008 to perform the same duties he had performed at H&G. These duties included providing services to customers who previously had been his customers at H&G.**

4. **At the time of the asset purchase, Kay had more than thirty years experience in the areas of radiographic nondestructive testing ("NDT") and inspection services for industrial and public infrastructures, including refineries, power plants, pipelines and storage tanks.**

5. **Kay signed an employment agreement, dated May 1, 2008, with Conam Inspection.**

6. **Like other executives, Kay negotiated with respect to some terms of the agreement, but was told by Conam's representative that his employer would not alter the terms of the non-compete agreement contained in paragraph 16 of the employment contract.**

7. **The employment agreement contains a restrictive covenant at Section 16, which provides as follows:**

    a. **The Company (including its affiliates) is in the business of providing non-destructive testing services and solutions, as well as vibration services and solutions (as defined by the American Vibration Institute) and steam generator services for industrial or public infrastructures, such as refineries, power plants, bridges, pipelines, tanks and aerospace components throughout the world (the "Business"). Executive**

**acknowledges and recognizes that the Business may be conducted throughout the world, and Executive further acknowledges and recognizes the highly competitive nature of the Company's Business. Accordingly, in consideration of the premises contained herein, the consideration to be received hereunder Executive shall not, during the Non-Competition Period (as defined below): (I) directly or indirectly engage, whether or not such engagement shall be as a partner, stockholder, officer, director, affiliate or other participant, in any Competitive Business (as defined below), or represent in any way any Competitive Business, whether or not such engagement or representation shall be for profit, (ii) interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, between the Company and any other person or entity, including, without limitation, any licensee, customer, supplier, employee or consultant of the Company, (iii) induce any employee or consultant of the Company to terminate his employment of consultancy with the Company or to engage in any Competitive Business in any manner described in the foregoing clause (I) or (iv) affirmatively assist or induce any other person or entity to engage in any Competitive Business in any manner described in the foregoing clause (I). Anything contained in this Section 16 to the contrary notwithstanding, an investment by Executive in any publicly traded company in which**

        **Executive and his affiliates exercise no operational or strategic control and which constitutes less than 2% of the outstanding shares of such entity shall not constitute a breach of the Section 16.**

    **b.**    **As used herein, "Non-Competition Period" shall mean the period commencing on the date hereof and terminating on the later to occur of (x) the third anniversary of the Commencement Date or (y) the first anniversary of the Termination Date. "<u>Competitive Business</u>" shall mean any entity throughout the world engaged in the Business and (ii) any entity engaged in a business competitive with any business then engaged in by the Company.**

    **c.**    **Executive understands that the foregoing restrictions may limit his ability to earn a livelihood in a business similar to the business of the Company, but he nevertheless believes that he will receive sufficient consideration and other benefits as an employee of the Company and as otherwise provided hereunder to justify clearly such restrictions which, in any event (given his education, skills and ability), Executive does not believe would prevent him from earning a living.**

**8.**    **At the time he was hired by Conam, Kay was already familiar with the prices being charged to H&G customers, as well as the decision makers, job and billing history of those customers.**

9.  Prior to his employment with Conam, Kay had built up his relationships with the customers over many years.

10. Plaintiff, Mistras Group, Inc., (Mistras) acquired the assets of Conam shortly after the execution of Kay's employment agreement with Conam, and the agreement was assigned to Mistras.

11. Mistras is a multi-national corporation engaged in the business of providing, *inter alia*, acoustic, thermotech, radiographic and various other kinds of testing and inspection services, products and systems.

12. Kay became an employee of Mistras, working at the same job, in the same location and performing the same duties for the same customers as he had with Conam. Mistras assumed Conam's no-compete agreement with Kay.

13. Mistras did not provide Kay with any additional substantive training in the business of nondestructive testing or inspection services. He continued to use the knowledge, expertise, education and training he had acquired previously during his more than thirty years' experience in the business.

14. Kay serviced the same 50-75 customers while employed by Mistras as had been his customers when he worked for H&G. Mistras introduced Kay to at most 3-5 new customers during his tenure with Mistras and the work for those customers was only 2-3% of the work at the Mistras Bloomfield operation.

15. Kay resigned his position with Mistras on May 13, 2011.

16. **During the time he was employed by Mistras, Kay did not make any plans to go to work for Defendant Wilco NDT, LLC (Wilco), or to compete with Mistras. However, after his resignation, Kay was contacted by Defendant Marcina Wilkinson (Wilkinson), who offered him a position to help create Wilco.**

17. **Kay accepted a position with Wilco as General Manager and started the Wilco operation in Bloomfield to be in direct competition with Mistras.**

18. **Twelve other Mistras employees resigned their employment with Mistras at or the exact time that Kay left Mistras.**

19. **All the other Mistras employees who resigned at or around the time of Kay's resignation worked with the same customers as Kay, and also had relationships with those customers.**

20. **To date Mistras has produced no evidence that Kay solicited any of the other Mistras employees to leave their employment for Wilco.**

21. **Mistras currently has no employees assigned to its Bloomfield office and has not been able to hire employees to staff its Bloomfield office.**

22. **Virtually all of the Mistras customers in the Bloomfield area have switched to Wilco.**

23. **To date Mistras has introduced no evidence that Kay solicited any of the Mistras customers to cease doing business with Mistras and move their business to Wilco.**

24. **Kay did not remove or provide Wilco any Mistras documents, manuals, computers or other property.**

25. **Mistras has introduced no evidence that Kay has disclosed any confidential or proprietary information belonging to Mistras to any other person or entity.**

26. **Kay is not currently being paid by Wilco and would suffer a substantial loss of income if he were prohibited from working in his field for one year as provided in the covenant not to compete.**

## Conclusions of Law

1. **All parties agree the Court has jurisdiction over the subject matter of, and the parties to, this action.**

2. **The parties have stipulated that the employment contract at issue, including the covenant not to compete, is governed by the law of the state of New Jersey.**

3. **New Jersey courts will only enforce covenants not to compete that are reasonable and the party seeking to enforce must show (1) the covenant is necessary to protect the parties legitimate interest, (2) enforcement causes no undue hardship on the former employee, and (3) enforcement would not violate the public interest.** *Meadox Medicals, Inc. v. Life Systems, Inc.*, **3 F. Supp. 2d 549, 552 (D.N.J. 1998).**

4. **Under New Jersey law, an employer may not prevent an employee from using the general knowledge and skills in an industry that have been built up over the employee's career. Mistras may not, therefore, prevent Kay from using the knowledge and skills he has acquired in his more than thirty years in the**

business of nondestructive testing and inspection. *Coskey's Television & Radio Sales & Serv., Inc. v. Foti*, 602 A.2d 789, 794 (N.J. Super. 1992).

5. Under New Jersey law, an employer may not restrain a person from using information and knowledge learned or acquired prior to that employment. *Coskey's, supra* at 795; *Meadox*, 3 F. Supp. 2d at 553.

6. Under New Jersey law, an employer may not prevent an employee from using customer contacts and relationships that he has developed over the course of his career and prior to his employment. *Id.; see also Apaporis, LLC v. Yueh*, 2008 WL 509819 (N.J. Super. 2008) (injunction denied on analogous facts).

7. Because Mistras has not demonstrated that Kay has used any proprietary, confidential or trade secret information belonging to Mistras or wrongfully interfered with the customer or employee relationships of Mistras, the covenant will not be enforced at this time. *See Platinum Mgmt., Inc v. Dahms*, 666 A.2d 1028, 1042 (N.J. Super. 1995); *United Board & Carton Corp. v. Britting*, 160 A.2d 660, 664 (N.J. Super. 1960).

8. In balancing the relative hardships to Kay and to Mistras, enforcing the restrictive covenant would have a very significant effect on Kay, and a more limited effect on Mistras.

9. The restrictive covenant contained in the employment agreement is unconscionable as to its geographic scope (worldwide) and its scope of businesses for whom Kay may not work (any entity engaged in any business that is in any

way competitive with any business engaged in by Mistras anywhere in the world), and those terms will not be enforced.

10. Because Mistras has not demonstrated that it will suffer irreparable harm if Kay is allowed to compete with Mistras within the Four Corners area, the Court cannot enforce the restrictive covenant based on the present record and New Jersey law.

All tendered findings and conclusions not incorporated herein are deemed Denied. The Temporary Restraining Order is hereby Dissolved.

A Judgment consistent with these findings of fact and conclusions of law should be drawn up by counsel for Defendants and presented to the Court within twenty (20) days.

DATED this 30th day of November, 2011.

_____
**BRUCE D. BLACK**
Chief United States District Judge